UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NOEL BARRY CORA,<br>    Plaintiff, | :<br>: |
| | : |
| v. | :     3:24cv1450 (VAB) |
| | : |
| OFFICER #1 LAST NAME GARDNER,<br>*et al.*,<br>    Defendants. | :<br>:<br>: |

## INITIAL REVIEW ORDER

Noel Barry Cora ("Plaintiff") is a sentenced prisoner housed at Cybulski Correctional Institution ("Cybulski") in the custody of the Connecticut Department of Correction ("DOC").[1] He filed his Complaint under 42 U.S.C. § 1983 seeking compensatory damages against Commissioner Quiros and seven other DOC employees who work at New Haven Correctional Center ("NHCC") and Cybulski Community Reintegration Center. He sues Officer #1 Gardner, Officer #2 Arthur, Lieutenant Jackson, Warden Brunelle ("NHCC Defendants"); and Warden Thibeault, Captain O'Neal, and Officer King ("Cybulski Defendants").[2] Compl., ECF No. 1 (Sept. 9, 2024) ("Compl."). His Complaint describes his alleged mistreatment during his incarceration at several DOC facilities.[3]

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Publicly available information on the DOC website shows that Plaintiff was sentenced on October 12, 2023 to two years of incarceration. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=444668.

[2] Plaintiff has not specified whether he sues Defendants in their individual or official capacities. But as he seeks only damages, the Court will assume he means to assert only individual capacity claims. As discussed further in this Order, official capacity claims for monetary damages against Defendants (all state employees) are barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

[3] Plaintiff asserts a claim for negligence under state law in this action. *See* Compl. at 16-17. The Court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims. The core purpose of an initial review order is to make a speedy initial screening determination of whether the lawsuit may proceed at all in federal court and should be served upon any of the named defendants. If there are no facially plausible federal law claims against any of the named defendants, then the Court would decline to exercise supplemental jurisdiction over any state law claims under 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course by way of a motion to

1

For the reasons that follow, the case shall proceed on Mr. Cora's individual capacity claims for damages based on: (1) Fourteenth Amendment violation for use of excessive force against Correction Officer Gardener and Correction Officer Arthur; and (2) Fourteenth Amendment deliberate indifference to health and safety and medical needs against Correction Officer Gardener and Correction Officer Arthur.

All other claims, including official capacity claims, against the NHCC Defendants, are **DISMISSED** without prejudice.

Defendants Commissioner Quiros, Warden Brunelle, and Lieutenant Jackson, and all claims against them are **DISMISSED**.

Mr. Cora's claims and allegations against the Cybulski Defendants (Warden Thibeault, Captain O'Neal, and Officer King) are **SEVERED** as misjoined under Federal Rule of Civil Procedure 20 and 21. These claims are **DISMISSED without prejudice** to Mr. Cora pursuing them against the Cybulski Defendants in separate lawsuits.

If Mr. Cora believes he can allege facts to cure the deficiencies of his claims against the NHCC Defendants identified in this ruling, he may file a motion to amend and attach an Amended Complaint by **April 11, 2025**.

An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.

---

dismiss or motion for summary judgment. More generally, the Court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a Defendant is without prejudice to the right of any Defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment.

I.   **BACKGROUND**[4]

On July 12, 2023, Mr. Cora allegedly became involved in a "minor verbal altercation" with Officer Gardner. Compl. at 10. When Mr. Cora tried to "remove [himself] from the dispute," Officer Gardner allegedly physically assaulted him, while Officer Arthur held him down. *Id.*

After this alleged assault, Mr. Cora allegedly remained on the floor and immediately requested medical attention. *Id.* The responding officer allegedly denied Mr. Cora's request for medical attention. *Id.* Because Mr. Cora allegedly could not get off the floor, the officer allegedly threatened him with pepper spray. *Id.* Several officers then allegedly "physically scooped Plaintiff up off floor" and carried him to segregation. *Id.*

While Mr. Cora allegedly was in segregation, the officers allegedly intimidated him so that he feared for his life and was afraid to speak to medical staff. *Id.* Mr. Cora alleges that the refusal to provide him with medical treatment resulted in his contracting a staph infection that caused his leg swell so that he could barely walk. *Id.* at 11. Mr. Cora's staph infection allegedly was checked on the fourteenth day of his fourteen-day punitive segregation. *Id.* Mr. Cora's assault injuries allegedly were never checked during his segregation. *Id.*

On the last day of his punitive segregation, Mr. Cora allegedly was transferred to Bridgeport Correctional Center ("BCC"). *Id.* Due to the allegedly harsh conditions at BCC, Mr. Cora allegedly walked with a cane for weeks but was never checked on by medical staff. *Id.* at 11.

---

[4] Not all of the allegations from the Complaint have been summarized, just those necessary to providing a context to this initial review. Moreover, the Court has construed this Complaint to the extent practicable.

3

Mr. Cora allegedly tried to see the Disciplinary Hearing Officer and to have an investigation into what happened during the incident for which he was given a disciplinary report. *Id.* at 12. Mr. Cora allegedly was found guilty without a hearing or a defense. *Id.*

Mr. Cora claims that he did not know how to call the police until his mother called him a year later. *Id.* at 10. After he allegedly learned how to contact the police, he allegedly was denied the ability to do so. *Id.*

Mr. Cora allegedly sustained retaliation because his cell was searched "everyday" during his incarceration at Osborn Correctional Institution ("Osborn"). *Id.* at 13. He allegedly was also subject of harassment and intimidation at Osborn. Mr. Cora claims that he was "targeted while housed at Carl Robinson Correctional Institution and Brooklyn Correctional Institution, where Officer Lapierre allegedly sabotaged his legal mail and property and Officer Green threatened him with chemical agent exposure. *Id.* at 13, 18-19.

He claims that he continues to be targeted at his current facility, Cybulski. *Id.* at 13. After Mr. Cora allegedly spoke to Warden Thibeault, Officer King allegedly threatened him by putting his fingers in Plaintiff's face while he was eating and using threatening gestures. *Id.* Officer O'Neal allegedly has discriminated against Mr. Cora by leaving him in isolation while other inmates like Mr. Cora have been placed in "cubes." Mr. Cora alleges that O'Neal called him a "hot head" or a "broken piece of glass ready to burst," although he allegedly did not even know Mr. Cora. *Id.* at 14.

Mr. Cora complains that he was deprived of clean meal and food tray when he provided with morning oatmeal that had a wet wipe in it. *Id.* at 15. He allegedly brought these conditions to the attention of correctional staff to no avail. *Id.* at 15. Mr. Cora allegedly was again denied

4

his morning oatmeal after he requested to be provided with the proper calorie amount. *Id.* Officer Kennedy allegedly gave him only a small non-edible piece of cake. *Id.* Because Mr. Cora allegedly sustained a 90-day loss of commissary privileges, he allegedly was "force[d]" to eat the cake. *Id.*

Mr. Cora claims that he has not been able to obtain the relevant video footage of the incident at NHCC or other incidents resulting in his being found guilty of disciplinary violations. *Id.* at 12, 13-14. He asserts that his requests for video footage have been ignored or that the video was altered to remove any showing of staff violation. *Id.* at 14.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, a prisoner's civil complaint against a government entity or government actors must be reviewed, and any portion of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, must be dismissed.

In reviewing a *pro se* complaint, the allegations must be construed liberally, interpreting them to raise the strongest arguments they suggest. *See Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest.").[5] But, a *pro se* complaint must still allege enough facts—as distinct from legal conclusions—to establish plausible grounds for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of

---

[5] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, alterations, and derivative citations for all quotations from cases.

action, supported by mere conclusions statements, do not suffice . . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007))).

## III. DISCUSSION

Mr. Cora's Complaint describes several unrelated incidents involving different individuals at NHCC, BCC, Osborn, Brooklyn, and Cybulski. Because, under Rule 10 of the Federal Rules of Civil Procedure, "The title of the complaint must name all the parties." Fed. R. Civ. P. 10(a), the Court will only consider the case brought against the following parties: Commissioner Quiros, the NHCC Defendants, and the Cybulski Defendants.

### A. The Claims Against Commissioner Quiros

"[T]here is no special rule for supervisory liability," and "a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020); *see Raynor v. Maldonado*, No. 3:24-CV-1221 (JAM), 2024 WL 4533748, at *4 (D. Conn. Oct. 21, 2024) ("The fact that a prison official has a supervisory title or role at the prison does not automatically mean that the official was personally involved with or is liable for any misconduct by lower-level officers.").

Mr. Cora, however, has not alleged any facts describing conduct by Commissioner Quiros. Because Mr. Cora has not alleged any facts to suggest that Commissioner Quiros had any direct involvement with the incidents alleged in the complaint, he has failed to state plausible grounds for relief against him.

Accordingly, all of the claims against Commissioner Quiros will be dismissed.

6

B.     **<u>Misjoinder and Severance</u>**

Rule 20 of the Federal Rules of Civil Procedure permits a plaintiff to sue multiple defendants in the same lawsuit only if the allegations arise "out of the same transaction, occurrence, or series of transactions or occurrences" and if there are "question[s] of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2); *see also Arista Records v. Does 1–4*, 589 F. Supp. 2d 151, 154 (D. Conn. 2008) ("The 'same transaction' requirement means that there must be some allegation that the joined defendants 'conspired or acted jointly.'" (quoting *Tele-Media Co. v. Antidormi*, 179 F.R.D. 75, 76 (D. Conn. 1998))).

Rule 21 of the Federal Rules of Civil Procedure makes clear that misjoinder of defendants "is not a ground for dismissing an action," but it allows a court to "drop a party" and to "also sever any claim against a party." Fed. R. Civ. P. 21; *see also Burno v. Salerno*, 30-cv-1926 (VAB), 2021 WL 3493621, at *17 (Aug. 9, 2021) ("In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: '(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [ ] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims.'" (quoting *Costella v. Home Depot U.S.A., Inc.*, 888 F.Supp.2d 258, 263–66 (D. Conn. 2012) (alterations in original))).

Here, Mr. Cora's claims against the NHCC Defendants arise from his alleged physical assault on July 12, 2023, and do not arise from the same transactions or occurrences that are the basis for his claims against the Cybulski Defendants for allegedly subjecting him to retaliation, discrimination, and indifference to his food and nutritional needs in May and August 2024. Mr.

7

Cora's claims against the NHCC Defendants and the Cybulski Defendants do not involve common defendants or any other issue of common fact or law. Nor is there a temporal relationship between Mr. Cora's claims against the NHCC Defendants and the Cybulski Defendants. Mr. Cora thus appears to have filed two or more lawsuits in a single complaint. Indeed, he has captioned each of his claims as Complaint #1 through Complaint #4.

Generally, district courts have concluded in similar circumstances that inclusion of such unrelated claims in one complaint constitutes improper joinder of defendants in violation of Rule 20(a)(2). *See Staton v. Quiros*, No. 3:23-CV-00494 (JAM), 2024 WL 4349075, at *2–3 (D. Conn. Sept. 30, 2024) (unrelated claims arising from occurrences at two different correctional facilities were misjoined); *Lindsay v. Semple*, 19-cv-751 (JCH), 2019 WL 3317320, at *10-11 (D. Conn. July 24, 2019) (prisoner's claim against supervisory DOC personnel regarding his readmission to the SRG program not properly joined with his claims against other prison official defendants arising from denial of medical care and use of excessive force); *Torres v. UConn Health*, 17-cv-00325 (SRU), 2017 WL 3737945, at *1 (D. Conn. Aug. 29, 2017) (prisoner's claim against a state trooper not properly joined with prisoner's claims against DOC medical personnel relating to his treatment while imprisoned); *Webb v. Maldonaldo*, 13-cv-144 (RNC) 2013 WL 3243135, at *3 (D. Conn. June 26, 2013) (prisoner's Eighth Amendment claims of excessive force against some DOC officials not properly joined with First Amendment claim against other DOC officials challenging DOC policy prohibiting certain sexually explicit materials).

As a result, the claims against the Cybulski Defendants should be severed from Mr. Cora's claims against the NHCC Defendants. And the Court will retain in this action Mr. Cora's more clearly defined claims against the NHCC Defendants.

Accordingly, Mr. Cora's s claims against the Cybulski Defendants are dismissed without prejudice to his refiling such claims by way of a separate action or actions. *See Ibbison v. Quiros*, 22-CV-01163 (SVN), 2023 WL 1766440, at *8 (D. Conn. Feb. 3, 2023) (dismissing without prejudice claims against misjoined defendants); *Lindsay*, 2019 WL 3317320, at *11 (same); *Torres*, 2017 WL 3737945, at *1 (same).

C.      **The Claims Against the NHCC Defendants**

Because the publicly available information on the DOC website shows that Mr. Cora was a pretrial detainee at the time of the events alleged in his Complaint, Mr. Cora's claims of excessive force and deliberate indifference are governed by the Fourteenth Amendment, rather than the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment." (citations omitted)); *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015) ("We have said that 'the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989))); *see also Charles v. Orange Cnty.*, 925 F.3d 73, 85-86 (2d Cir. 2019) ("[P]ursuant to the Due Process Clause of the Fourteenth Amendment, the Supreme Court has extended to civil detainees . . . protection for prisons under the Eighth Amendment." (citing *Youngberg v. Romeo*, 457 U.S. 307, 321–22 (1982))).

Thus, the Court will review whether Mr. Cora has stated a plausible claim for damages under Section 1983 for Fourteenth Amendment violation against any NHCC Defendant. To do so, Mr. Cora must allege facts sufficient to determine that a Defendant was personally involved in the alleged constitutional violation. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983") (internal citation and quotation marks omitted).

1.  **The Excessive Force Claims Against the NHCC Defendants**

To prevail on a claim of excessive force in violation of the Fourteenth Amendment, a plaintiff must show "the force purposely or knowingly used" against him was "objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). In other words, a plaintiff must demonstrate both (1) the defendant's purposeful or knowing state of mind, and (2) the objective unreasonableness of his use of force. *See id.* This standard cannot be applied "mechanically"; rather, it "turns on the facts and circumstances of each particular case." *Id.* at 397 (citation omitted).

Regarding the first element, a defendant must have possessed "a purposeful, a knowing, or possibly a reckless state of mind" to be liable for excessive force. *Id.* at 396. If the plaintiff's claim of excessive force amounts to no more than negligently inflicted force, however, the claim cannot proceed under the Fourteenth Amendment. *See id.*, 576 U.S. at 396. The second element considers whether the force employed was objectively unreasonable. *Id.* at 397. The force employed will be deemed objectively unreasonable if it was "not rationally related to a legitimate governmental objective," or if it was "excessive in relation to that purpose." *Edrei v. Mason*, 892 F.3d 525, 535–36 (2018) (citation omitted).

10

In addition, prison officials can be held liable under section 1983 "for failing to intervene in a situation where another official is violating an inmate's constitutional rights, including the use of excessive force, in their presence." *Abreu v. Bascue*, No. 9:18-CV-0186 (MAD/ATB), 2018 WL 11466956, at *13 (N.D.N.Y. May 1, 2018). Liability for failure to intervene "can arise where a prison corrections officer fails to prevent another corrections officer from committing a constitutional violation if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Ibbison v. Scagliarni*, No. 3:23-CV-1379 (SVN), 2024 WL 624045, at *6 (D. Conn. Feb. 14, 2024) (citations omitted). By contrast, a prison official is not liable if they were not personally involved with the use of excessive force. *See Kravitz v. Purcell*, 87 F.4th 111, 129 (2d Cir. 2023).

Mr. Cora alleges an assault by Correction Officers Gardner and Arthur after he attempted "to remove" himself from a "verbal altercation." Compl. at 10. Although thin, Mr. Cora's allegations indicate that he sought to avoid a conflict with Officers Gardner when Officers Gardner and Arthur physically assaulted him, rendering him unable to stand up from the floor. *Id.* at 10 ("When I proceeded to remove myself from the dispute. I was then struck and continually assaulted by (Defendant Doe #1 Officer Last Name Gardner) and held by (Defendant Doe #2 Officer Last Name Arthur). . . . Following this assault. While I was on the floor after being assaulted, I immediately requested medical attention. The officer responding denied me medical attention and threatened to pepper spray me because I could not get up off the floor."). Accepting these allegations as true, which the Court must at this stage of the proceedings, these

11

allegations are sufficient to suggest that Officers Gardner and Arthur subjected him to an objectively unreasonable level of force while in violation of the Fourteenth Amendment.

Accordingly, Mr. Cora's Fourteenth Amendment excessive force claims to proceed against Officer Arthur and Gardner in their individual capacities will be permitted to proceed.

### 2.     The Fourteenth Amendment Deliberate Indifference Claim

A claim that a prison official has acted with deliberate indifference under the Fourteenth Amendment involves analysis of two prongs: (1) an objective prong, which requires a plaintiff to show that "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) a subjective or "*mens rea*" prong, which requires a plaintiff to show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29.

With respect to the first prong of a deliberate indifference claim, the plaintiff must show that the conditions he experienced "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Id.* at 30. With respect to the second prong, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. Negligence is insufficient to satisfy this component. *Id.* at 36 (detainee must show that defendant acted recklessly or intentionally, not merely negligently).

Mr. Cora alleges that Officers Arthur and Gardener acted with deliberate indifference to his health and safety and medical needs. Compl. at 10. More specifically, he claims that

Defendants assaulted him to the extent he could not stand up from the floor and that a responding officer ignored his request for medical attention for injuries. Mr. Cora does not describe his alleged injuries but does allege that he later "contracted some kind of sta[ph] infection while in segregation." *Id.* at 11. While neither Officers Gardener nor Arthur are alleged to be the responding officer who denied Mr. Cora's request for medical treatment, Mr. Cora does allege that he requested medical treatment immediately after the assault, and conceivably both Officer Gardener and Arthur had the opportunity to prevent the Fourteenth Amendment violation for deliberate indifference to Plaintiff's health and safety and medical needs.

Accordingly, for initial pleading purposes, Mr. Cora's allegations suffice to permit his individual capacity claims for Fourteenth Amendment deliberate indifference to his health and safety and medical needs against Correction Officers Gardener and Arthur to proceed for further development of the record.

### 3.  The Segregation Claims

 "[A] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Nonetheless, a pretrial detainee's "liberty interest in freedom from restraint is highly qualified and must be balanced against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001) (internal quotation marks and citations omitted). A pretrial detainee can state a substantive due process claim regarding the conditions of his confinement in two ways. First, he must show that the defendants were deliberately indifferent to the conditions of his confinement; second, he can show that the conditions are punitive. *See Darnell*, 849 F.3d at 34 n.12. To establish a substantive due process claim arising from a punitive placement, a pretrial detainee must allege

13

facts tending to show that a condition was "imposed for the purpose of punishment," either directly by offering proof of such intent, or indirectly by indicating that the condition is not reasonably related to a legitimate governmental purpose, such as institutional security. *See Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 55 (2d Cir. 2017) (quoting *Bell*, 441 U.S. at 538).

In Complaint #1 and #2, Mr. Cora alleges that he was unable to obtain medical treatment for his assault injuries and only received attention for his staph infection on the fourteenth day of his segregation. Compl. at 10-11. He claims that staff only checked his infection on his last day of segregation but never reviewed his assault injuries. *Id.* at 10. In Complaint #2, Mr. Cora alleges that his fourteen days in punitive segregation constituted a violation of "the human rights act for prisoners."[6] *Id.* at 11.

These sparse allegations fail to support an inference that any NHCC Defendant had direct involvement with his treatment or conditions, including his medical care, while he was confined in the segregation unit. Nor do Plaintiff's allegations suggest that any NHCC Defendant was involved with his placement in punitive segregation for fourteen days. As a result, Plaintiff has not alleged a plausible Fourteenth Amendment substantive due process claims arising from deliberate indifference to his segregations conditions or his punitive placement in segregation against the NHCC Defendants in their individual capacities. *See Wright*, 21 F.3d at 501.

---

[6] Plaintiff may be asserting a violation of the United Nations Nelson Mandela Rules (the "United Nations Standard Minimum Rules for the Treatment of Prisoners") or Governor Lamont's Executive Order 21-1 (which references the Nelson Mandela Rules). But neither provides a source of a private right of action. *See Wainwright v. Med. Dep't Cuyahoga Cty. Corr. Ctr.*, No. 1:17-CV-1621, 2018 WL 2077507, at *3 n. 41 (N.D. Ohio May 4, 2018) (citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) (concluding Minimum Rules is not a treaty binding on the United States, or even a source of private rights, if considered a self-executing treaty)); *Evans v. Barone*, No. 3:22CV00074 (SALM), 2022 WL 408920, at *5 (D. Conn. Feb. 10, 2022) (no private right of action conferred by Lamont Executive Order).

Accordingly, this claim will be dismissed without prejudice to renewal in an Amended Complaint.

4.     **The Fourteenth Amendment Procedural Due Process Claims**

In analyzing a claim of violation of procedural due process, the court must consider (1) whether there exists a liberty or property interest of which a person has been deprived, and (2) if so, whether the procedures followed by the State were constitutionally sufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). But the Second Circuit has held that "*Sandin* does not apply to pretrial detainees." *Benjamin,* 264 F.3d at 188–89.

In Complaint #1 and #2, Mr. Cora alleges that he was unable to obtain medical treatment for his assault injuries and only received attention for his staph infection on the fourteenth day of his segregation. Compl. at 10-11. He claims that staff only checked his infection on his last day of segregation but never reviewed his assault injuries. *Id.* at 10. In Complaint #2, Mr. Cora alleges that his fourteen days in punitive segregation constituted a violation of "the human rights act for prisoners."[7] Compl. at 11.

---

[7] Plaintiff may be asserting a violation of the United Nations Nelson Mandela Rules (the "United Nations Standard Minimum Rules for the Treatment of Prisoners") or Governor Lamont's Executive Order 21-1 (which references the Nelson Mandela Rules). But neither provides a source of a private right of action. *See Wainwright v. Med. Dep't Cuyahoga Cty. Corr. Ctr.*, No. 1:17-CV-1621, 2018 WL 2077507, at *3 n. 41 (N.D. Ohio May 4, 2018) (citing *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010) (concluding Minimum Rules is not a treaty binding on the United States, or even a source of private rights, if considered a self-executing treaty)); *Evans v. Barone*, No. 3:22CV00074 (SALM), 2022 WL 408920, at *5 (D. Conn. Feb. 10, 2022) (no private right of action conferred by Lamont Executive Order).

For the same reasons discussed above, Plaintiff cannot allege plausible Fourteenth Amendment claim for damages against any NHCC Defendant absent facts to establish their direct personal involvement in his disciplinary proceedings.

Accordingly, the Fourteenth Amendment procedural due process claims against the NHCC Defendants in their individual capacities will be dismissed without prejudice to renewal in an Amended Complaint.

### 5. The Failure To Preserve Video Footage Claim

Mr. Cora alleges that video footage has not been preserved relevant to an assault that "occurred … while in segregation" despite his multiple preservation or Freedom of Information (F.O.I.) requests. Compl. at 11.[8] Even if any of the NHCC Defendants were involved with the failure to preserve the video footage, Mr. Cora cannot assert a plausible claim under section 1983 for failure to preserve the video footage despite his requests. He has not alleged that any Defendant violated his federal rights. *See Burton*, 2021 WL 3493621, at *14 (response to requests to preserve video footage did not state a claim for violation of a federal right); *Aviles v. Rodriguez*, No. 3:19-CV-1140 (SRU), 2019 WL 5695955, at *6 (D. Conn. Nov. 4, 2019) (dismissing claim that the prison official did not preserve video footage of incidents that gave rise to claims of deliberate indifference to health and safety "for failure to state a claim upon which relief may be granted" because plaintiff had not alleged how official's failure "to respond to his requests to preserve the video footage of the incidents violated his federally or constitutionally protected rights").

Accordingly, this claim will be dismissed, but to the extent that video footage becomes

---

[8] It is not clear Plaintiff refers to same assault that occurred on July 12, 2023. In addition, Plaintiff has not alleged that any of the NHCC Defendants were involved with the denial of the preservation request.

relevant in this case, the issue may be one for the discovery phase of this case.

### 6. The Claims Against NHCC Warden Brunelle and Lieutenant Jackson

Mr. Cora has not alleged any facts in the Complaint describing conduct by either Defendant Warden Brunelle or Lieutenant Jackson. As previously discussed, a plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *Wright*, 21 F.3d at 501 (2d Cir. 1994) ("It is well settled in [the Second] Circuit that 'personal involvement of the defendants in an allegedly constitutional deprivation is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991))). Because Mr. Cora has not satisfied this requirement and a court cannot "speculate about unpleaded facts that might be favorable to the plaintiff," *see Darby v. Greenman*, 14 F.4th 124, 130 n.6 (2d Cir. 2021), any claims against them cannot proceed.

Accordingly, the Section 1983 claims against NHCC Warden Brunelle and Lieutenant Jackson will be dismissed as not plausible.

### 7. Official Capacity Relief

To the extent that Mr. Cora asserts official capacity claims for monetary damages against Defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Mr. Cora may only proceed for injunctive or declaratory relief against a Defendant in his or her official capacity to the extent he alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). Here, Mr. Cora's allegations describe violations of his rights that occurred in the

past. In addition, Mr. Cora is no longer housed at NHCC. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility).

Accordingly, Plaintiff may not proceed against any of the Defendants for injunctive or declaratory relief because all of the official capacity will be dismissed as not plausible.

**ORDERS**

The Court enters the following orders:

(1) The case shall proceed on Mr. Cora's individual capacity claims for damages based on: (1) Fourteenth Amendment violation for use of excessive force against Correction Officer Gardener and Correction Officer Arthur; and (2) Fourteenth Amendment deliberate indifference to health and safety and medical needs against Correction Officer Gardener and Correction Officer Arthur.

All other claims, including official capacity claims, against the NHCC Defendants, are **DISMISSED** without prejudice. Defendants Commissioner Quiros, Warden Brunelle, and Lieutenant Jackson, and all claims against them are **DISMISSED**.

Mr. Cora's claims and allegations against the Cybulski Defendants (Warden Thibeault, Captain O'Neal, and Officer King) are **SEVERED** as misjoined under Federal Rule of Civil Procedure 20 and 21. These claims are **DISMISSED without prejudice** to Mr. Cora pursuing them against the Cybulski Defendants in separate lawsuits.

If Mr. Cora believes he can allege facts to cure the deficiencies of his claims against the NHCC Defendants identified in this ruling, he may file a motion to amend and attach an Amended Complaint by **April 11, 2025**. An Amended Complaint, if filed, will completely

replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.

(2) The Clerk of Court shall verify the current work addresses for Correction Officer Gardener and Correction Officer Arthur with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **April 4, 2025**, and report on the status of the waiver request by **April 18, 2025**. If any Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(4) The Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **June 27, 2025**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **October 31, 2025**. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed by **December 5, 2025**.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Cora changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Cora must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(10) Mr. Cora shall utilize the Prisoner Efiling Program when filing documents with the Court. Mr. Cora is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** Dated at New Haven this 7th Day of March, 2025.

/s/ Victor A. Bolden
Victor A. Bolden
United States District Judge